IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT REAMES,

    Plaintiff,

                                3:11-CV-1448-PK

                                FINDINGS AND
v.                              RECOMMENDATION

AM CAR RENTAL SERVICES, INC., and
AVIS BUDGET CAR RENTAL, L.L.C.,

    Defendants.

PAPAK, Magistrate Judge:

       Plaintiff Robert Reames filed this action against his former employers, defendants AB Car Rental Services, Inc., and Avis Budget Car Rental, LLC, in the Multnomah County Circuit Court of the State of Oregon on November 1, 2011. Reames was employed by defendants, who operated Reames' employer jointly under the name Avis/Budget Rent-A-Car, from June 28, 2007, through October 19, 2009, when Reames suffered an on-the-job injury that temporarily

Page 1 - FINDINGS AND RECOMMENDATION

disabled him from full-time work. On or around November 2, 2010, Reames was released by his physician to full duty, and Reames subsequently sought reinstatement in his old job position. Defendants (each a Delaware corporation with its principal place of business in New Jersey) declined to reinstate Reames (a resident of Oregon) or to offer him alternative employment.

By and through his complaint, Reames alleges defendants' liability for failure to reinstate an injured worker to the worker's former position in violation of Or. Rev. Stat. 659A.043 and for failure to re-employ an injured worker in other available and suitable work in violation of Or. Rev. Stat. 659A.046. Reames seeks money damages for past lost wages and benefits in the amount of $11,627 and for future lost wages and benefits in the amount of $11,267, non-economic damages in the amount of $25,000, and his attorney fees and costs in an unspecified amount.

On December 1, 2011, defendants removed Reames' action to this court on the theory that this court has diversity jurisdiction over his claims pursuant to 28 U.S.C. § 1332(a), based on the complete diversity of the parties and the amount in controversy, which defendants assert exceeds $75,000 after Reames' prayer for unspecified attorney fees is taken into account.

Now before the court is Reames' motion (#5) for remand. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, Reames' motion should be granted, and this action should be remanded to the Multnomah County Circuit Court for further proceedings in that forum.

## LEGAL STANDARD

"A motion to remand [a] case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after . . . notice of removal under section -28 U.S.C.

Page 2 - FINDINGS AND RECOMMENDATION

§]1446(a) [is filed]. If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). On a motion for remand, the party opposing remand has the burden to establish that removal was proper. *See Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). The removal statute, 28 U.S.C. § 1441, is strictly construed against the party seeking to establish grounds for removal. *See Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009), *citing Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004).

## ANALYSIS

When a defendant removes an action from state court on the grounds that the federal court may properly exercise diversity jurisdiction over the action, the defendant bears the burden of establishing federal jurisdiction, including satisfaction of the amount-in-controversy requirement. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Where the complaint does not specify a total amount in controversy, the party seeking removal must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional threshold. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-701 (9th Cir. 2007).

In analyzing the merits of a motion for remand, the courts first determine whether it is "facially apparent" from the complaint that the jurisdictional threshold has been met. *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006), *quoting Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). If it is not apparent on the face of the complaint whether or not the jurisdictional threshold has been met, the court may then consider facts in the removal petition, and may additionally "require parties to submit summary-judgment-type evidence

Page 3 - FINDINGS AND RECOMMENDATION

relevant to the amount in controversy at the time of removal." *Id., quoting Singer*, 116 F.3d at 377. Where a plaintiff seeks actual and punitive damages, the federal courts consider both types of damages in determining the amount in controversy. *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943). In addition, where a contract or an underlying statute mandates award of attorney fees to a prevailing party, the court may include such fees in its determination of the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

This court may properly exercise diversity jurisdiction over any civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and there exists complete diversity of citizenship among the parties. 28 U.S.C. § 1332(a). Here, it is not disputed that the parties are diverse for purposes of Section 1332. Reames prays for a total of $47,894 in damages, including $22,894 in economic damages and $25,000 in non-economic damages. Thus, this court may properly exercise diversity jurisdiction over Reames' action only in the event the evidence proffered by the defendants in opposition to Reames' motion is sufficient to establish that it is more likely than not that Reames' attorney fees "in controversy" as of the time defendants effected removal of this action exceeded $27,106.

The Ninth Circuit has not yet expressed any opinion as to whether expected or projected future attorney fees may properly be considered "in controversy" at the time of removal for purposes of the diversity-jurisdiction statute, and the decisions of the district courts are split on the issue. *See Dukes v. Twin City Fire Ins. Co.*, Case No. CV-09-2197-PHX-NVW, 2010 U.S. Dist. LEXIS 3617, *5-6 (D. Ariz. Jan. 5, 2010) (discussing disagreement among the district courts of this circuit "as to whether attorneys' fees incurred after the date of removal are properly

Page 4 - FINDINGS AND RECOMMENDATION

included in the amount in controversy"); *Giordano v. Park Ave. Life Ins. Co.*, Case No. CV-09-1405-SJO, 2009 U.S. Dist. LEXIS 47507, *7-8 (C.D. Cal. Apr. 7, 2009) (same); *Burk v. Medical Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1068-1069 (D. Ariz. 2004) (same). Some courts have adopted the position that "[w]hen estimating attorney's fees for the purposes of establishing jurisdiction, the only fees that can be considered are those incurred as of the date of removal," *Faulkner v. Astro-Med, Inc.*, Case No. CV-99-2562-SI, 1999 U.S. Dist. LEXIS 15801, *9 (N.D. Cal. Oct. 4, 1999), *citing Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993), *see also, e.g., Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998) (to same effect), whereas other courts include estimates or projections of expected or likely future attorney fees that can reasonably be anticipated as of the time of removal in their calculation of the amount in controversy, *see, e.g., Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-1011 (N.D. Cal. 2002), *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002).

Although the Ninth Circuit has not yet resolved this issue, at least two other circuits have issued opinions bearing on the question. In a case first filed in federal court, and thus not raising the question of remand, the Seventh Circuit has reasoned that attorney fees can be "in controversy" for purposes of the diversity-jurisdiction statute only if they accrued as of the time the complaint was first filed in the action, based on the proposition that federal jurisdiction necessarily depends on circumstances that pertain at the time an action is filed. *See Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001), *citing Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958-959 (7th Cir. 1998). In *Gardynski-Leschuck*, the Seventh Circuit reasoned as follows:

Page 5 - FINDINGS AND RECOMMENDATION

[J]urisdiction depends on the state of affairs when the case begins; what happens later is irrelevant. . . . Recovery of less than [the jurisdictional threshold amount] would not retroactively deprive the district court of jurisdiction; similarly, post-filing events that increase defendant's outlay cannot create jurisdiction that was lacking at the outset. . . . According to [evidence of record], attorneys' fees have just recently [brought the combined total of accrued attorney fees and the plaintiff's prayer for money damages] over the [jurisdictional] threshold--perhaps the cost of preparing the post-argument brief on jurisdiction was the critical event. It would be neither sensible nor consistent with [applicable Supreme Court jurisprudence regarding jurisdiction] to say that there was no federal jurisdiction on the date the complaint was filed, the trial held, or the judgment entered in the district court, but that the appeal enabled counsel to run up the tab and create a jurisdictional basis for further proceedings. **Unless the amount in controversy was present on the date the [federal] case began, the suit must be dismissed for want of jurisdiction.**

One way to determine at the outset the amount in controversy attributable to legal fees would be to use the anticipated outlay, reducing uncertainties to present value much the way the expected value of lost future income is determined in a tort case. Suppose it costs $30,000 to litigate a case like this through a jury trial and appeal, but 90% of similar cases settle quickly with legal expense of $5,000 apiece. Then the expected value of attorneys' fees would be $7,500 in each of the 10 cases: ($30,000 + ($5,000x9)) / 10 = $7,500. Only the anticipated (actuarial) value of the legal bill would be includable on the date each case begins.

**Yet this calculation includes the value of legal services that have not been and may never be incurred, and are therefore not "in controversy" between the parties.** Unlike future income lost to injury, legal fees are avoidable. It is essential to distinguish between the likely course of litigation and the legal rights of the parties. Suppose the McCoys sell a garden rake for $10 to the Hatfields, who find it defective. The Hatfields could buy a new rake at Sears for $10, but instead they file suit against the McCoys under the Magnuson-Moss Warranty Act. They state in the complaint that they anticipate attorneys' fees of $50,000 (for a total amount-in-controversy of $50,010), because the enmity of the parties makes settlement impossible. Assume this is factual--that the Hatfields and McCoys will fight the case to the last dollar in their bank accounts. Still, the amount "in controversy" between the parties at the outset is no more than $10, the sum the McCoys would have to pay to resolve the case on the date it was filed.

Just so here. Suppose that the day after [plaintiff] filed her complaint [defendant] had tendered [the total amount of her prayed-for money damages, which do not exceed the jurisdictional threshold] in satisfaction of her demands. [Plaintiff] could not have turned it down on the ground that Ford left out [the difference

Page 6 - FINDINGS AND RECOMMENDATION

> between the jurisdictional threshold and her prayed-for money damages] in attorneys' fees, for those fees had not then been incurred. . . . A plaintiff who receives everything she asks for in the complaint has no remaining dispute with the defendant. . . . Just the other day the Supreme Court held that legal expenses yet to be incurred on the date a suit begins do not create a "case or controversy" within the meaning of Article III. *Steel Co. v. Citizens for a Better Environment*, 118 S. Ct. 1003, 1019, 140 L. Ed. 2d 210 (1998). For the same reason, **legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount "in controversy" when the suit is filed.**

*Gardynski-Leschuck*, 142 F.3d at 958-959 (some citations omitted; emphasis supplied).

The Tenth Circuit, by contrast, has, without analysis, ruled that a district court did not err when it considered reasonably anticipated future attorney fees as a part of the "matter in controversy" for purposes of determining whether the jurisdictional threshold had been exceeded. *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998). *Miera*, like *Gardynski-Leschuck*, did not raise the remand issue.

It appears that a nascent consensus may be emerging among the district courts of the Ninth Circuit that the split between the *Conrad/Faulkner* and the *Simmons/Brady* lines of cases may best be resolved by adoption of the *Conrad/Faulkner* reasoning that attorney fees anticipated but unaccrued at the time of removal are not properly in controversy for jurisdictional purposes. *See Dukes*, 2010 U.S. Dist. LEXIS 3617 at *7. The *Dukes* court reasoned that:

> the better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal. *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006). **Future attorneys' fees are entirely speculative, may be avoided, and are therefore not "in controversy" at the time of removal.**

*Id.* (emphasis supplied). Regardless, however, of whether any such consensus has formed or is forming, I agree with the *Dukes* court that, under *Abrego* and its predecessor cases (holding that

Page 7 - FINDINGS AND RECOMMENDATION

if it is not facially apparent from the removed complaint that the amount in controversy exceeds the jurisdictional threshold, on a motion for remand the courts may consider evidence "relevant to *the amount in controversy at the time of removal*" in calculating the amount in controversy for jurisdictional purposes, *Abrego*, 443 F.3d at 690 (emphasis supplied), *quoting Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)), it would be inappropriate to include in calculation of the amount in controversy any fees unaccrued – and therefore necessarily speculative – at the time removal was effected. Moreover, I agree with the *Gardynski-Leschuck* court's tacit suggestion that, setting aside the necessarily speculative nature of any estimate of future attorney fees, it is impossible to devise any workable "actuarial" formula for determining the amount of attorney fees that may be reasonably anticipated at the time of removal. Any attempt to do so must necessarily rely on wholly arbitrary decisions regarding, for example, whether or not to consider the possibility of pre-trial settlement of a removed dispute, whether or not to consider the possibility that fees will be incurred post-trial in connection with appellate proceedings, and how to define the universe of material historical data to which the formula should be applied. In addition, my jurisprudential experience leads me to conclude that it is highly unlikely that attorney fees fit a normal or any other regular distribution; to the contrary, I believe it is likely that attorney fees are extremely irregularly distributed, and marked by high positive kurtosis and skew. That is, any such actuarial formula, no matter how exquisitely crafted, will inevitably and systematically produce dramatically inaccurate predictions a significant proportion of the time. I therefore recommend that this court adopt the rule that attorneys' fees anticipated to be incurred after the date of removal (or, at the latest, after the date a party's motion for remand is decided) are not properly included in calculation of the amount in

Page 8 - FINDINGS AND RECOMMENDATION

controversy for jurisdictional purposes.

Assuming *arguendo* that the court adopts my foregoing recommendation, the court should grant Reames' motion to remand. Defendants have made no showing regarding the attorney fees Reames may have incurred prior to removal (and/or remand) of this action, and thus have not offered evidence in light of which it is more likely than not that Reames' incurred attorney fees exceeded $27,106 as of the time of removal. On the assumption that the court will adopt my recommendation, this court therefore may not properly exercise subject-matter jurisdiction over Reames' action, and it should be remanded to state court.

On the opposite *arguendo* assumption, that the court will elect to follow the reasoning of the *Simmons/Brady* lines of cases (that attorney fees that may reasonably be anticipated as of the time of removal may be considered in determining the jurisdictional amount in controversy), remand is likewise the appropriate disposition of Reames' motion, albeit subsequent to a markedly different analysis.

As defendants correctly note, each of Reames' two claims provides for mandatory award of attorney fees to the prevailing plaintiff, so that, in the event Reames were to prevail on one or both of his claims, he would be entitled to mandatory award of his attorney fees reasonably incurred in litigating this action. However, defendants have not made a showing that Reames' fees may reasonably be anticipated to exceed $27,106 sufficient to overcome the presumption against federal subject-matter jurisdiction.

In support of their argument that Reames' total attorney fees may reasonably be expected to exceed $27,106, defendants rely chiefly on the analysis set forth in *Beaver v. NPC Int'l, Inc.*, 451 F.Supp.2d 1196 (D. Or. 2006). In *Beaver*, a former employee alleged his former employer's

Page 9 - FINDINGS AND RECOMMENDATION

liability for workers' compensation retaliation in violation of Or. Rev. Stat. 659A.040, for failure to reinstate an injured worker in violation of Or. Rev. Stat. 659A.043, and for failure to re-employ an injured worker in other available and suitable work in violation of Or. Rev. Stat. 659A.046.[1] Counsel for the *Beaver* plaintiff was Christopher A. Slater, who represents plaintiff Reames in this action. As in this action, the *Beaver* plaintiff filed his claims in state court, the *Beaver* defendant removed on diversity grounds, and the *Beaver* plaintiff timely moved for remand on the grounds that the jurisdictional threshold had not been met. Also as here, the *Beaver* defendant argued in response that, taking into account the plaintiff's entitlement to award of attorney fees in the event he prevailed, the jurisdictional threshold was satisfied. The *Beaver* plaintiff's prayer for money damages totaled $37,000, such that removal was proper in that action only if the plaintiff's attorney fees could reasonably be anticipated to exceed $38,000.

In considering the merits of the *Beaver* motion to remand, noting that "[t]his court and others have sanctioned the introduction of decisions and awards in similar cases as evidence of the amount in controversy," *Beaver*, 451 F.Supp.2d at 1198 (citations omitted), Judge King held that "[a]ttorneys fee awards in employment discrimination cases arising under Oregon law are probative of the amount in controversy in [*Beaver*] if the cases are sufficiently similar [to *Beaver*]," *id.* Judge King considered two cases he deemed sufficiently similar to *Beaver* to be considered probative of the fees that might reasonably be anticipated in *Beaver*: *Robins v. Scholastic Book Fairs*, 928 F. Supp. 1027 (D. Or. 1996) and *McDuffy v. Interstate Distributor Co.*, Case No. 3:04-CV-1335-KI (D. Or. Jan. 4, 2005). In *Robins*, after characterizing the case as

---

[1] As defendants correctly note, while Section 659A.040 is not at issue here, Sections 659A.043 and 659A.046 are the statutes under which Reames asserts his rights in this action.

Page 10 - FINDINGS AND RECOMMENDATION

"'relatively uncomplicated' and 'among the most straight-forward employment law cases that compose approximately 25% of this Court's civil docket,'" the court found the attorney fees requested by the prevailing plaintiff to be excessive, and reduced them to an award of $43,505.07 for 455.9 hours of work, including 193.8 hours at the trial court level. *Id.* at 1199, *quoting Robins*, 928 F. Supp. at1033, 1033 n. 10.

In considering *McDuffy*, Judge King noted that the prevailing *McDuffy* plaintiff had, like the *Beaver* plaintiff and like Reames in this action, been represented by Christopher A. Slater. Judge King described the relevant procedural history of *McDuffy* as follows:

> In *McDuffy*, the plaintiff's complaint sought $59,000 in specified damages, plus attorneys fees. However, the defendant in *McDuffy* offered no evidence of the likely attorneys fees or that would provide context for evidence proffered regarding jury verdicts in similar discrimination cases. *Id.*, slip opinion at 3-4. Accordingly, the defendant in that case failed to show by a preponderance of the evidence that the amount in controversy was above $75,000. *Id.* at 4. The claims in *McDuffy* were similar to this case: workers' compensation discrimination under ORS 659A.040 and two other discrimination claims under ORS chapter 659A. After the remand to state court, the plaintiff in *McDuffy* amended his complaint to increase the amount of non-economic damages, bringing the total specified in the complaint to $109,000. After prevailing [in state court, defendants not having sought removal following the increase in the plaintiff's prayer], the plaintiff requested attorneys fees for 470.4 hours of billed time. Although plaintiff's counsel requested an award based on an hourly rate of $250.00, the circuit court judge found that $225 was a reasonable hourly rate, and awarded plaintiff $104,283.00 in attorneys fees, also reducing the award to approximately 463.4 hours of attorney time.

*Id.*

On the basis of *Robins* and *McDuffy*, Judge King reasoned that the plaintiffs' attorney fees could be expected to exceed the $75,000 jurisdictional threshold by a wide margin:

> Based on the $225 hourly fee that the same attorneys obtained in the *McDuffy* fee award, it would require just under 169 hours of attorney time to reach $38,000 in fees, and only 152 hours at the rate to which plaintiff's attorneys claimed they

Page 11 - FINDINGS AND RECOMMENDATION

> were entitled in *McDuffy*. In view of the 193.8 hours this court found reasonable
> – at the trial level only – in the "uncomplicated" employment discrimination suit
> in *Robins*, and the 463.4 hours that the state court in *McDuffy* found reasonable in
> a case involving claims similar to this case, it is more likely than not that more
> than $38,000 worth of attorneys fees at the administrative and trial court levels are
> in controversy in this case.

*Id.* at 1199-1200. Defendants argue that this court in this action should adopt Judge King's reasoning.

Reames, for his part, offers evidence that, notwithstanding Judge King's prediction, the *Beaver* parties finally settled their dispute following an expenditure of only 34.0 hours of the plaintiff's counsel's time, or total attorney fees on the order of approximately $10,000. Reames argues that the discrepancy between the awards in *McDuffy* and *Beaver* illustrates "the limitations in using other cases as comparator evidence of the amount in controversy based on the potential attorney fees."

While I do not take issue with Judge King's reasoning (except insofar as it presumes that unaccrued fees that may reasonably be anticipated as of the time of removal may properly be considered in determining the amount in controversy), *Beaver* cannot be read to stand for the proposition that plaintiffs represented by attorney Christopher A. Slater may always be anticipated to incur at least approximately $45,000 in fees, without regard to the relative complexity of their claims. Judge King's reasoning is persuasive that, *in a case likely to be resolved at trial*, attorney fees of such magnitude may reasonably be anticipated, but the defendants here have made no showing that Reames' action is among the small minority of cases that cannot be resolved either by settlement or by dispositive motion.

Defendants are correct that Judge King's analysis in *Beaver*, together with the cases

Page 12 - FINDINGS AND RECOMMENDATION

discussed therein, are competent evidence of the amount in controversy here. However, standing alone they are not sufficient to support defendants' position by a preponderance of the evidence. To support the conclusion that the *Beaver* analysis is applicable here without material modification, defendants were under a burden to establish grounds for concluding that Reames' action could not reasonably be anticipated to be in the majority of cases that reach relatively inexpensive resolution, either through settlement or through early dispositive motion. By relying solely on *Beaver* and the cases discussed therein, rather than submitting evidence as to the obstacles to efficient resolution, if any, that pertain to this particular action, defendants have failed to meet their burden to establish that jurisdiction is appropriate in this court.

Defendants alternatively argue that Reames is likely to amend his complaint to increase his damages prayer, on the grounds that he has expressly reserved the right to do so in his complaint and that his counsel has done so in the past. The possibility that Reames may at some later date augment his prayer for damages is without consequence to the analysis this court is called upon to perform. As of the present date, Reames has not so augmented his damages prayer. In the event Reames amends his complaint to seek additional money damages within one year of the date he first filed his complaint, defendants may seek removal at that time, and if Reames did so more than one year after filing his complaint, defendants could argue that the one-year limitation period applicable to removal should be tolled, in the event the facts supported the argument that Reames' original prayer for money damages was made in bad faith.

Finally, defendants alternatively argue that Reames' motion should be denied because Reames' counsel refused to stipulate to a $74,999 cap on Reames' recovery, including attorney fees. However, Reames was under no obligation to agree to any such stipulation and, indeed, it

Page 13 - FINDINGS AND RECOMMENDATION

would arguably have been malpractice for his attorney to agree to any such recovery cap. In the event litigation of Reames' claims proved unexpectedly expensive, or currently unforeseeable circumstances justified a significantly higher damage award than currently anticipated, such a cap could unwarrantedly prevent Reames from being made whole, even in the event he prevailed on one or both of his claims. Reames was justified to reject defendants' proposed stipulation, and his rejection thereof is without jurisdictional effect.

Because defendants have not met their burden to establish that the amount in controversy in this action exceeds the jurisdictional threshold of $75,000, the court should grant Reames' motion for remand. This action should be remanded to state court for further proceedings in that forum (presumably, referral to mandatory arbitration pursuant to Or. Rev. Stat. 36.405).

## CONCLUSION

For the reasons set forth above, Reames' motion (#5) for remand should be granted, and this action should be remanded to the Multnomah County Circuit Court for further proceedings in that forum.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

///

///

///

Page 14 - FINDINGS AND RECOMMENDATION

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 2nd day of February, 2012.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge